Good morning, Your Honors, and may it please the Court, Counsel. As this Court is doubtlessly aware, the State of Illinois, perhaps deservedly, has garnered a reputation for being ethically challenged. So in 2003, the Illinois General Assembly passed the State Officials and Employees Ethics Act, a comprehensive statutory scheme aimed at introducing the perhaps foreign concept of ethics into Illinois State Government. This included Sections 1510 and 1525, which are at issue in this appeal, which provided protection and a civil remedy for state-employee whistleblowers, to use the common phrase. The Court below held that the State created this civil remedy for whistleblowers without waiving sovereign immunity, a proposition that not only makes no sense, but is directly controverted by an amendment to Section 1 of the State Lawsuit Immunity Act that was passed as part of the Ethics Act when it was enacted, that explicitly waived sovereign immunity. The Court below also held that the Court of Claims had jurisdiction, even though this same amendment to the State Lawsuit Immunity Act explicitly added the Ethics Act as one of the acts for which sovereign immunity was waived, and listing it separate and distinct and in addition to the Court of Claims Act. So as a straightforward matter of statutory interpretation, for the reasons that have been fully briefed to this Court, of course sovereign immunity was waived, and it was obvious that the intent was to invest the Circuit Courts with jurisdiction to hear Ethics Act claims, a fact that was simply clarified by the 2009 amendment to the Section 1525, which then said the Circuit Courts of the State shall have jurisdiction. As I pointed out in our brief, even if for some reason this Court disagrees with my analysis on this, the further fact is that my client filed this claim before that amendment took effect, and therefore we then have to consider what is the meaning of that amendment. Does it have to be retroactive with respect to the acts that gave the cause of action to approve, or because it concerns purely jurisdictional matters, does it invest the Circuit Courts with jurisdiction on the date that the amendment took effect? My view is this Court doesn't even have to go there because it was clear that sovereign immunity was waived and that the Circuit Courts of the State had jurisdiction in 2003. But I did provide that additional argument. Now my client alleges that he did what the Ethics Act encourages state employees to do, blow the whistle on public official misconduct, and that his discharge reflected a retaliation against him that began about two months after he blew the whistle, and less than two months after the subject of his retaliation. His whistleblowing, Lt. Wingo in this reference, committed suicide. But he never had the opportunity to fully and fairly litigate this claim. There was an arbitration, but the arbitration was confined to the subject matter of whether or not the contract was violated. It was brought by the union, not by the plaintiff. And as the record makes clear, the arbitration never even considered the retaliatory discharge theory. It doesn't even mention the Ethics Act. Yes, it found that there was just cause to terminate Mr. Block, but it made that finding in a vacuum in which this alternative theory was never presented, never considered. Similarly, Mr. Block did bring a claim in federal court, and that initially did include an Ethics Act claim along with a Disability Act claim and a Family and Medical Leave Act federal claim. But defendants knocked out the Ethics Act claim in federal court by raising an 11th Amendment defense, so it was tossed out on jurisdictional grounds, and the federal court never heard the evidence in support of an Ethics Act claim. Now, I understand that defendants have repeatedly gone back and said, well, if two courts found there was just cause, the only way you can make this Ethics Act claim fly is to countervene the decisions of both the arbitrator and the federal court. I understand that, but again, those decisions were made in this vacuum in which the evidence in support of the retaliatory discharge claim, the whistleblower claim, if you will, was never even considered, never presented. So, for example, evidence that the opinion of the psychiatrist that was used to justify, in part, Mr. Block's termination, evidence that his opinion may have been tainted, that wasn't the main issue before either the federal court or the arbitrator. Other evidence in support of retaliatory discharge was never presented, and so I think defendants' position doesn't take into account is the whole notion that we see repeatedly in employment law jurisprudence of pretext that, yes, maybe formally there was a decision to discharge someone based on just cause, but we still need the opportunity to prove that that was pretextual. Could the ethics issue have been raised in the grievance procedure? I don't believe that it could. I mean, that would require an interpretation of the collective bargaining agreement to see if that would allow, I guess it would be the equivalent of an affirmative defense. But I think further, our point is that that was a creature of the union. It was a creature of the collective bargaining agreement. My client never had the opportunity to raise it. He was not the person driving the horse here. He had no say over what the union presented or did not present on his behalf. It was the union's grievance, even though he filed it. So as far as I know, I don't know that they could. But I would also, of course, as I think pointed out in our reply brief, the Illinois Supreme Court has ruled in cases directly on point that a claim for retaliatory discharge can't be bargained away. And that even considered a case where there was a prior union grievance. So I think we have clear guidance from the Illinois Supreme Court on that position with respect to that. I'm not sure that I even need to take up all of my time unless there's other questions. Let me just point to a couple of other things. One of which is I know there was an argument on this appeal about, well, maybe we didn't sufficiently plead the ultimate facts on our complaint. And therefore, there might be additional grounds for upholding the dismissal. The thing I would emphasize there is that, well, we never had an opportunity to amend the complaint either. I think the liberal rules and amendments should favor an opportunity. So even if this court or the court below determined that, yes, we should spell out more of our theory of retaliation and the motivation for the retaliation, we should have an opportunity to do so. I would point out that the concept of the thin blue line or nobody likes a snitch kind of is implied in our complaint, that that provides a motivation. But if this court feels that we should plead that fact or some sort of evidentiary theory, we should have the opportunity to do so. And let's see. As far as I think we distinguished the Beckman case that was cited by defendants pretty thoroughly, the defendant at one point argues that in responding to the motion to dismiss that we should have supplied additional facts. But, of course, the motion to dismiss was primarily looking at the jurisdictional grounds and the idea that there was some requirement for us to supply additional facts in response to a motion to dismiss as if the only legitimate way to respond to a motion to dismiss is to amend the complaint. There's just no authority for that proposition. I think everything else has been thoroughly briefed, including the collateral estoppel issue, which I've somewhat addressed here. So if there's no other questions, I'll save the court's time. Thank you. All right. Thank you, Your Honor. Counsel? So as the court's aware, this was initially a three-count complaint. All of the counts were dismissed by the circuit court, and the plaintiff is only appealing from the dismissal of the Ethics Act claim. And the circuit court dismissed that claim on sovereign immunity grounds. There was actually a piece of the sovereign immunity inquiry that's relevant that wasn't brought to the circuit court's attention. It wasn't brought to the circuit court's attention by the defendants through inadvertence, probably for the same reasons by the plaintiff. So the circuit court was focusing on you need an express waiver of sovereign immunity. And, again, everyone's pretty much agreed that that's the case. And the circuit court was focused on the language of the Ethics Act itself. And at the relevant time, there wasn't some very express language that says sovereign immunity is waived. Jurisdiction is in the circuit court. That language wasn't there. It is now. They added a sentence to the Ethics Act. The legislature added a sentence to the Ethics Act. But the circuit courts of the state should have jurisdiction to hear cases brought under this article. But it wasn't there at the relative time when this discharge occurred. What the circuit court didn't consider is the Immunity Act and language in the Immunity Act. So I think the question here is does that change the sovereign immunity result? Because since 2003, when the Ethics Act was created, the State Lawsuit Immunity Act provided that except as provided in, and that lists a bunch of statutes, the Illinois Public Relations Act, this Act, Court of Claims Act, and the Ethics Act, the state should not be made a defendant or party in any court. So you have that reference in the Immunity Act. And I suggest the court look at that language and determine that that still falls short of the type of express waiver that was necessary. The legislature may have wanted to waive sovereign immunity at that time, but they still fell short because what they do, and I think that they realized that because they cleaned this up later with the 2009 amendment. So what they do in the Immunity Act is simply say except as provided in the Ethics Act, the state should not be made a defendant. So they're just referring you back to the Ethics Act. So it's really the same problem, that then you go back and look at the language of the Ethics Act and that type of very express waiver that you would need is missing. Why isn't that, to put it in a non-legal phrase, I guess, doing something twice? If it's incorporated explicitly in the Waiver Act, why would it need to be explicitly incorporated into the Ethics Act waiver? Because the Immunity Act is just referring you to the Ethics Act. It says except as we tell you in the Ethics Act, sovereign immunity is not waived. And then you go and look and see what they say in the Ethics Act. And they haven't waived, in this provision, they haven't waived the sovereign immunity. Let me rephrase my question then because that's not what I was... The Immunity Act says we're not waiving sovereign immunity except in A, B, C, D, E, F, G. If the Ethics Act is mentioned in G, what else is needed? I mean, I'm not against the legislature. The General Assembly clarifying matters. You know, that helps us every day. But why is it necessary in the context of the issues that are presented to the court today? Well, I think it's also important to keep in mind that the Ethics Act is a large act that has multiple sections and not just these whistleblower provisions. So there are other parts of it that allow for judicial review in the circuit courts of, for example, decisions of certain ethics commissions. So there are other times when the circuit court should come into play. They're just dealing with the Administrative Review Act, in effect, incorporating it into it. Yeah, in different sections. So that could just be clarifying these other references to the circuit court that don't have to do with this section. I think that you really need to go and look at each section of the Ethics Act and see, is there this express waiver? Because I would say that the Immunity Act is just referring you back to the Ethics Act. And it referred back to the Ethics Act as an entire entity and not specific sections of it. Is that correct? Right. And then you look at the specific sections and say, is there something here that would be this type of express waiver of sovereign immunity? And, you know, the legislature may have, you know, wanted to waive this immunity early on, but they still needed this very express language, and they're presumed to know that they needed this express language, and that was really not there until this 2009 amendment. I think that's the issue for the court to consider is what is the effect of the Immunity Act in this puzzle. The second part of the sovereign immunity question is a retroactivity issue. And there I think the circuit court was correct in looking to the version of the Ethics Act that was in effect at the time of the 2007 discharge, not as it read in 2010 when the circuit court action was filed. That's consistent with the Illinois Supreme Court's most recent pronouncements on how retroactivity is analyzed. And this has really been the case since the Commonwealth Edison decision, which I think is about the early 2000s. It's in a case called Doe more recently. And let's bear with me one second. And the court's looking at the threshold question of whether the legislature specified the temporal reach of the statute. It's not this is it substantive, is it procedural analysis anymore. That's pretty much been superseded. So with this amendment, the legislature said that that particular section takes effect in becoming a law. That was in August of 2009. So the change in the law became effective in August 2009. It would not apply retroactively to conduct occurring before that date. And the plaintiff points out, well, that was in place at the time I filed my complaint. But that is a retroactivity analysis. That's really saying, oh, that's just a procedural statute. Those procedures were in place, so we're going to use those procedures. But that's what the Illinois Supreme Court said. We don't use that analysis anymore. We just look at the time that the statute came into effect. They cite some interspousal immunity cases that are really no different. I mean, in that case, sovereign immunity is not involved. It's an interspousal tort immunity that's involved. And the court in those cases is simply analyzing is this a substantive or procedural statute. We think it's procedural, so we think it's okay to apply it retroactively. But that's the substance procedure analysis that we don't use anymore. There's also case law that talks about immunity as a substantive matter. And I've cited that in my brief. We don't really use vested rights analysis anymore, but there's a discussion of a case under the Local Municipalities Tort Immunity Act. And the court marks that that's sort of in the nature of a vested defense that can't retroactively be taken away. So I would say the sovereign immunity is in the nature of something substantive where it would be inappropriate to retroactively change the law. But the substance procedure analysis is not the current analysis in any event. And those are really the two parts of the sovereign immunity question. If the court were to decide that the circuit court made a mistake on sovereign immunity and jumped the gun there, there were other issues that were raised in the circuit court as a basis for dismissing the complaint. And since we're here, I think it's appropriate that the court consider those as an element of judicial economy. It's appropriate because the court, of course, can affirm the decision on any grounds. And so the two other matters for the court to consider are whether the complaint, this count of the complaint, is appropriately dismissed because it fails to state a cause of action. The reason being that when you go and look at the complaint, there's really no factual nexus there that connects the discharge to any kind of purported retaliation for disclosing information about the lieutenant. And yes, of course, the plaintiff doesn't need to plead evidentiary facts and so on. But what they do need to do, I kind of see this as a continuum, they need to, what they can't do is simply plead factual conclusions that are unsupported by specific facts. What they can't do is just paraphrase the elements of a cause of action in conclusory terms. When you look at the complaint, it sets out, well, there were these disclosures about this lieutenant, here's what the disclosures were, and there's one section that says, and the termination of the employment was in retaliation for these disclosures. Well, that's a conclusion. And some cases say, well, if you take out the conclusions and you look at what's left, is there a cause of action? And I think when you take out that one conclusory sentence, there's really nothing that can tie this discharge to anything that has to do with some motivation. You can't tell from the complaint who was the discharging party, but you also, there aren't any facts to show that anyone who was involved in this investigation says, I made these disclosures, and there was an investigation that was prompted by a complaint from his ex-wife that he was spending time at her house improperly, and then he was discharged. There's nothing that ties anyone who was involved in the investigation of the discharge to any kind of retaliatory animus about the disclosures about the lieutenant. When the issue comes up, if the court were to agree that there are insufficient facts alleged, should the complaint be amended? He was not given an opportunity to amend the complaint, and that's generally what happens. I have suggested that that might not be appropriate in this case, and I go into this in the brief, and this is, of course, for the court to think about. The reason being that there were these two other proceedings, the arbitration and this federal court proceeding, and there's a lot of detail about, particularly in the arbitration proceeding, about all the facts that led up to this discharge, about how there had been problems going on for years. The Department of Police had made extensive efforts to help him out in other ways before the discharge. He acknowledged a lot of these rule violations. There's a lot of facts there, very specific facts, that it would seem that it would be very difficult to add facts here without contradicting facts that the arbitrator found, and that's the significance of the Beckman case that I cite in the brief, which talks about how it's not appropriate to allow amendment of a complaint when that would result in contradicting findings that were made in an arbitration proceeding. So the amendment is an issue to think about there. The other issue that was raised as an alternative basis for dismissal in the circuit court was collateral estoppel arguments. So the court needs to consider the effect of these two prior proceedings that also involve these common core facts that are relevant to the discharge. One, of course, was the arbitration proceeding. The actual issue decided was whether there was just cause for dismissal. The other proceeding was the federal court lawsuit that was decided on. Some claims were dismissed, but I'm talking about a decision that was decided on a summary judgment that found against the plaintiff on an Americans with Disabilities Act claim and a Family Medical Leave Act claim. And in the course of that, it talks about how the employee was not meeting his employer's work expectations. So are those the same claims? No. Are the particular facts identical enough to trigger collateral estoppel? We believe that they are, because they all relate to these common core reasons for the discharge. The identity of the factual issues, of course, is something the court has to consider, both as to the arbitration and to the federal lawsuit. There are a couple of additional considerations just with respect to the arbitration on whether collateral estoppel would apply. And the most significant one there is the question of whether the arbitration decision should be given inclusive effect in this case. And that's where the decisions that the plaintiff cites, the Midget versus Saget and the Reihart decision come in, because those cases, those are Illinois Supreme Court cases that talk about how doctrines like preemption and collateral estoppel should not be applied to deprive a union employee of the ability to bring a common law retaliatory discharge action. And I think there's a question about whether those type of cases would extend here. I would argue that they should not be extended. This is not a common law retaliatory discharge action. And the argument isn't that the arbitrator's just cause finding as such precludes bringing the Ethics Act claim per se. I think the problem here is more specific, that there's a lot of very specific facts in the arbitration about the problems existing for years, the extensive efforts at rehab that the department made, the plaintiff's own acknowledgement of many of the violations, the finding that the discipline was even-handed and appropriate for this type of offense that would ultimately prevent him from prevailing in the Ethics Act claim. And so I think the collateral estoppel argument is more narrow, that he should not be able to disavow these specific findings that conflict with his theory. So this one consideration is, does the arbitration decision have perclusive effect? And the other thing to consider there, just with respect to the arbitration, is this idea of privity, because the plaintiff was a party of the federal lawsuit, but the technical party in the arbitration was the union. And the plaintiff has argued, well, I wasn't in privity with the union, I didn't control the litigation. I think that the privity of interest remains because the union was acting as his representative and was an adequate representative of his interests, even if he could not control every aspect of the litigation and say everything that he might have wanted to say. I cite cases in my brief, a case called the City of Brockford, that discusses how the union is in privity with a union member, which makes sense. I mean, the union is the representative of the union member. There's another case called Taylor, which is looking at a slightly different issue about whether there's a full and fair opportunity to litigate, and says, you know, we don't think that this decision is deprived of perclusive effect just because the union was the representative and not the union members, simply because they had to go with the union and couldn't have the counsel of their choice. That doesn't defeat any preclusive effect. So I believe that there was privity there. So those are all the considerations that come into play for the two alternative bases, the failure of state of claim and the collateral estoppel issues, which the court should look at if the court decides that the circuit court made a mistake as to the sovereign immunity process. With that, I'll conclude unless there's any questions. Thank you. Thank you, Your Honor. Responding in roughly the order that defendants' points were raised, with respect to the sovereign immunity issue, counsel characterized what happened in 2009 as, I think she used the term, well, the legislature cleaned it up later. Well, that's exactly right. And as we argue, what happened in 2009 was a clarification and not a substantive change of the Ethics Act as enacted in 2003. What defendants want the court to do is view the Immunity Act change in isolation from the Ethics Act. But that goes against the cardinal rule of statutory construction that you view statutes as a whole. It's part of the same enactment, part of the same statute in that sense. And accordingly, they have to be considered together. And what the 2009 amendment did was not clarify the question of sovereign immunity. That was already decided in 2003. The only thing it clarified was to make sure that everyone understood which court had jurisdiction. Again, my argument is that in 2003, by the fact that the Ethics Act was listed next to and separate from the Court of Claims Act, pretty clear the intent was to give circuit courts jurisdiction. Legislature came back in 2009 and removed any doubt. That's a clarification, not a substantive amendment. Council cited the Doe case about the retroactivity question. That's been fully briefed. Suffice it to say that where an amendment, a statutory amendment, is purely procedural and the law says it takes effect upon becoming law, then it has retroactive impact as far as when the cause of action accrues. And there is nothing in the Doe case that controverses the cases I cited on that specific point. With respect to the sufficiency of the pleadings, counsel argues that, well, there's nothing that really ties the discharge to the whistleblowing, and defendants cite the Beckman case. But in the Beckman case, the plaintiff failed to allege that the defendant knew that he was intending to file a worker's compensation claim. Failed to basically plead that the defendant even knew of his intentions. But in the case of R, the defendant clearly knew that the plaintiff had blown the whistle on his lieutenant. It is in the pleadings that he met with the police director, he met with the director of personnel, and he met with officers of the Secretary of State Inspector General's office. Now, I suppose you could split a hair and say, well, but that's not the same as pleading that the specific persons that decided his discharge knew of the whistleblowing. And if we need to spell that out and amend the complaint, fine, we'll do that. But we should be offered the opportunity to amend the complaint if the court finds that that's not sufficient. As far as counsel says it tries to distinguish the Ryherd case as far as the collateral estoppel issue by saying, well, that was limited to common-law retaliatory discharge. Well, the rationale is broader than that. The rationale talks about the reason it said that you don't have collateral estoppel between an arbitration and a common-law retaliatory discharge claim is because a common-law retaliatory discharge claim is based on the public policy of the state of Illinois. This is clearly based on the public policy of the state of Illinois because there was an actual statutory enactment. So the rationale of Ryherd clearly covers this case despite defendant's creative attempts to distinguish it. Finally, with the question of privity and whether there was privity between the union and the plaintiff in this case, we answered that in a reply brief, I think, adequately. I think the thing I would emphasize is I don't think you even reached that question because of Ryherd, because, you know, that your retaliatory discharge claim cannot be bargained away through agreements over collective bargaining agreement or arbitration over collective bargaining agreement. I think the Supreme Court has spoken with great clarity in that question. With that, I would simply conclude by asking the Court to please reverse and allow the plaintiff in this case to be able to finally litigate his Ethics Act claim. Thank you. Thank you all.